## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARRAS 46 LLC, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TWIN CITY FIRE INSURANCE COMPANY <br><br> Defendant. | Civil Action No. _____ <br><br> **JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Marras 46 LLC, individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Twin City Fire Insurance Company, ("Twin City") and in support thereof states the following:

### I.     <u>NATURE OF THE ACTION</u>

1.     Plaintiff Marra's 46 LLC operates Marra's Restaurant & Pizzeria in Livingston, New Jersey. Marra's Restaurant & Pizzeria is small, traditional, and independently owned Italian restaurant.

2.      To protect its business in the event that it suddenly had to suspend operations for reasons outside of her control, or in order to prevent further property damage, Plaintiff purchased insurance coverage from Twin City, including property coverage, as set forth in Twin City's Special Property Coverage Form (SS 00 07 07 05) ("Specialty Property Coverage Form").

3.      Twin City's Special Property Coverage Form provides coverages including

"Business Income" coverage, "Civil Authority" coverage and "Extra Expense" coverage.

4.      The Special Property Coverage Form's "Business Income" coverage promises to pay for loss due to the necessary suspension of operations following a physical loss or damage to the injured premises.

5.      The Special Property Coverage Form's "Civil Authority" coverage promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises because of damage to property in the immediate area of the insured premises.

6.      The Special Property coverage Form's "Extra Expense" coverage promises to pay the expense incurred to minimize the suspension of business and to continue operations.

7.      Plaintiff's insurance policy also includes Twin City's "Limited Fungi, Bacteria or Virus Coverage" endorsement (the "Virus Coverage Endorsement"), which applies to the Specialty Property Coverage Form.

8.      The Virus Coverage Endorsement provides limited coverage for losses caused by virus.

9.      The Virus coverage Endorsement states, with respect to the Specialty Property Coverage Form's Time Element Coverages, that if a suspension of operations is "necessary due to loss or damage to property caused by…virus," then Twin City's payment under the Time Element Coverage is limited to the amount of loss and expense sustained during a period of thirty days or the number of days indicated in the policy's declarations.

10.     Plaintiff was forced to suspend or reduce business at Marra's Restaurant & Pizzeria due to SARS-CoV-2, also known as COVID-19 and the resultant orders issued by civil authorities in New Jersey.

11.     Upon information and belief, Twin City has, on a widescale and uniform basis,

refused to pay its insureds under its Business Income, Civil Authority, and Extra Expense coverages for losses suffered due to COVID-19, any orders by civil authorities that have required the necessary suspension or reduction of business, and any effrots to prevent further propoerty damage or to minimize the suspension of business and continue operations.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states, and because (a) the Class consists of at least 100 members, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) no relevant exceptions apply to this claim.

13.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant regularly transacts business, including with the named Plaintiff, in this district and a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## II.    THE PARTIES

*Plaintiff*

14.    Marra's 46 LLC owns and operates Marra's Restaurant & Pizzeria in Livingston, New Jersey.

*Defendant*

15.    Defendant Twin City Fire Insurance Company is an insurance company organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut.

## III.    FACTUAL BACKGROUND

A.    *The Special Property Coverage Form*

16.    In return for the payment of a premium, Twin City issued Policy No. 13 SBA NZ0089 SB to Marra's 46, LLC for a policy period of May 4, 2019 to May 4, 2020. Policy No. 13

SBA NZ0089 SB is attached hereto as **Exhibit A**. Marra's 46, LLC has performed all of its obligations under Policy No. 13 SBA NZ0089 SB, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is 18 E Mount Pleasant Avenue, Livingston, New Jersey, 07039.

17.    In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.). Most property policies sold in the United States, however, including those sold by Twin City, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. In the Special Property Coverage Form provided to Plaintiff, Twin City agreed to pay "Covered Causes of Loss," meaning direct physical loss to Covered Property unless the loss is excluded or limited by the policy.

18.    Losses due to COVID-19 are a Covered Cause of Loss under Twin City policies with the Special Property Coverage Form.

19.    In the Special Property Coverage Form, Twin City agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of operations during the "period of restoration" caused by direct physical loss or damage. A "ppartial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy for which Twin City agreed to pay for loss of Business Income during the :period of restoration" that begins with the date of physical loss or damage.

20.    "Business Income" means net income (net profit or loss before income taxes) that Plaintiffs and the other Class members would have earned or incurred, as well as continuing normal operating expenses incurred, including payroll.

21.    The presence of virus or disease can constitute physical damage to property, as the

insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement  of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

22.     In the Special Property Coverage Form, Twin City also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct loss or damage to the Covered Property.

23.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

24.     Twin City also agreed to "pay for the actual loss of Business Income" that its insureds sustain when access to the Covered Property is specifically prohibited by order of a civil authority as the direct result of the risk of physical loss to property in the immediate area of the Covered Property.

25.     Plaintiff's Twin City insurance policy also incorporates Twin City's "Limited Fungi, Bacteria or Virus Coverage" endorsement, which applies to the Specialty Property Coverage Form.

26.     The Virus Coverage Endorsement provides limited coverage for losses caused by virus.

27.     The Virus Coverage Endorsement states, with respect to the Specialty Property Coverage Form's Time Element Coverages, that if a suspension of operations is "necessary due to loss or damage to property caused by …virus," then Twin City's payment under the Time Element Coverage is limited to the amount of loss and expense sustained during a period of thirty days or the number of days indicated in the policy's declarations. The declarations pages in Plaintiff's policy provides for Business Income and Extra Expense coverage for thirty days.

28.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Business Income from Dependent Properties provisions of the Twin City policy.

### B.     The Covered Cause of Loss

29.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

### The New Jersey Closure Orders

30.     On March 9, 2020, New Jersey Governor Philip Murphy issued Executive Order 103 instituting a state of emergency for Covid-19. Governor Murphy sought to fully and adequately protect the health, safety, and welfare of the citizens of the State of New Jersey from any actual or potential threat or danger that may exist from the possible exposure to Covid-19.

31.     On March 16, 2020, Governor Murphy issued Executive Order 104, limiting restaurants to only food delivery and/or takeout services. This order also restricted the hours of operation for any restaurant.

32.     The purpose of Executive Order 104 was to announce aggressive social distancing measures to mitigate further spread of Covid-19 in New Jersey.

33.     On March 21, 2020, Governor Murphy issued Executive Order 107, directing all residents to stay at home until further notice.

34.     On April 7, 2020, Governor Murphy issued Executive Order 119, extending the public health emergency in New Jersey.

28.     On April 11, 2020, Governor Murphy issued Executive Order 125, implementing additional mitigation requirements on NJ Transit, private carriers, and restaurants to limit the spread of covid-19.

29.     Executive Order 125 further limited occupancy in any restaurant to 10% of the stated maximum capacity.

30.     On May 6, 2020, Governor Murphy issued Executive Order 138, extending his prior executive order declaring a public health emergency in New Jersey.

31.     On June 3, 2020, Governor Murphy issued Executive Order 150, announcing the protocols for restaurants to begin in-person service at outdoor areas, effective June 15, 2020.

32.     On June 4, 2020, Governor Murphy issued Executive Order 151, extending his prior executive order declaring a public health emergency in New Jersey.

33.     On June 26, 2020, Governor Murphy issued Executive Order 157 announcing protocols for restaurants to being in person service at indoor areas beginning July 2, 2020, so long as, among other things, the number of patrons indoors does not exceed 25% of the establishment's capacity.

34.     On June 29, 2020, Governor Murphy issued Executive Order 158, which paused the resumption of indoor dining in New Jersey.

### The Impact of COVID-19 and the Closure Orders

35.     The presence of COVID-19 caused "direct physical loss of or physical damage" to the "Covered Property" under the Plaintiff's policy, and the policies of the other Class members,

by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

36.     The Closure Orders, including the issuance of New Jersey Executive Order Nos. 104, 104, 107, 119, 125, 138, 150, 151, 157, and 158 prohibited access to Plaintiff's and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

37.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense.

38.     On or about March 18, 2020, Marra's 46, LLC submitted a claim under the Policy.

39.     On April 1, 2020, Twin City denied the claim.

40.     Indeed, Twin City has, on a widescale basis with many if not all of its insureds, refused to provide Business Income and Extra Expense, Civil Authority, and Business Income from Dependent Properties coverage due to COVID-19 and the resultant executive orders by civil authorities that have required the suspension of practice.

## IV.    CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

42.     Plaintiff Marra's 46, LLC seeks to represent nationwide classes defined as:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Twin city; (b) suffered a suspension of their operations related to COVID-19, at the premises covered by their Twin City property insurance policy; (c) made a claim under their property insurance policy issued by Twin City; and (d) were denied Business Income coverage by Twin City for the  suspension of practice resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Twin City; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Twin City; and (d) were denied Civil Authority coverage by Twin City for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Twin City; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Twin City property insurance policy; (c) made a claim under their property insurance policy issued by Twin City; and (d) were denied Extra Expense coverage by Twin City despite their efforts to minimize the suspension of their practice caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had a Business Income from Dependent Properties provision under a property insurance policy issued by Twin City; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing their practice, at the premises covered by their Twin City property insurance policy; (c) made a claim under their property insurance policy issued by Twin City; and (d) were denied Business Income from Dependent Properties coverage by Twin City in connection with the suspension of their practice caused by COVID-19 (the "Business Income from Dependent Properties Breach Class").

41.    Plaintiff Marra's 46, LLC also seeks to represent nationwide classes defined as:

- All persons and entities with Business Income coverage under a property insurance policy issued by Twin City that suffered a suspension of their practice due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by Twin City that suffered loss of Practice Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by Twin City that sought to minimize the suspension of their practice in connection with COVID-19 at the premises covered by their Twin City property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with a Business Income from Dependent Properties provision under a property insurance policy issued by Twin City that sought to prevent property damage caused by COVID-19 by suspending or reducing practice operations, at the premises covered by their Twin City property insurance policy (the "Business Income from Dependent Properties Declaratory Judgment Class").

42. Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

43. This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

44. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

45.    **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a.    whether Twin City issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

b.    whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c.    whether Twin City wrongfully denied all claims based on COVID-19;

d.    whether Twin City's Business Income coverage applies to a suspension of operations caused by COVID-19;

e.    whether Twin City's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of practice as a result of COVID-19;

f.    whether Twin City's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.    whether Twin City's Business Income from Dependent Properties provision applies to a suspension of operations caused by COVID-19;

h.    whether Twin City has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i.    whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

46.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**    Plaintiff's claims are

typical of the other Class members' claims because Plaintiff and the other Class members are similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class members.  Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

47. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and its counsel.

48. **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

49. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**

Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

50.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## V.    CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

51.    Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth herein.

52.    Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

53.    Plaintiff's Twin City insurance policy, as well as those of the other Business Income Breach Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income Breach Class members' losses for  claims covered by the policy.

54.    In the Special Property Coverage Form, Twin City agreed to pay for its insureds' actual loss of Practice Income sustained due to the necessary suspension of operations during the

"period of restoration."

55.    "Business Income" means net income (net profit or loss before income taxes) that Plaintiff and the other Class Members would have earned or incurred, as well as continuing normal operating expenses incurred.

56.    COVID-19 caused direct physical loss and damage to Plaintiff's and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at their Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff's and the other Business Income Breach Class members' Twin City's insurance policies.

57.    Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Twin City or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

58.    By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Twin City has breached its coverage obligations under the Policies.

59.    As a result of Twin City's breaches of the Policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

60.    Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth herein.

61.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

62.     Plaintiff's Twin City insurance policy, as well as those of the other Civil Authority Breach Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Breach Class members' losses for claims covered by the policy.

63.     Twin City promised to pay "the actual loss of business income" that a policyholder sustains "when access to your scheduled premises is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises."

64.     The Closure Orders triggered the Civil Authority provision under Plaintiff's and the other members of the Civil Authority Breach Class's Twin City insurance policies.

65.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Twin City or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

66.     By denying coverage for any practice losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Twin City has breached its coverage obligations under the Policies.

67.     As a result of Twin City's breaches of the Policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**

**(Claim Brought on Behalf of the Extra Expense Breach Class)**

68.     Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth herein.

69.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

70.     Plaintiff's Twin City insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Breach Class members' losses for claims covered by the policy.

71.     In the Special Property Coverage Form, Twin City also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" "due to damage by a covered cause of loss" to the Covered Property.

72.     "Extra Expense" means expenses necessarily incurred by a policyholder "during the period of restoration to continue normal services and operations."

73.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

74.     Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Twin City or Twin city is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

75.     By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Twin City has breached its coverage obligations under the Policies.

76.     As a result of Twin City's breaches of the Policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Twin City is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – BUSINESS INCOME FROM DEPENDENT PROPERTIES**
**(Claim Brought on Behalf of the Business Income from Dependent Properties Breach Class)**

77.     Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth herein.

78.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income from Dependent Properties Breach Class.

79.     Plaintiff's Twin City insurance policy, as well as those of the other Business Income from Dependent Properties Breach Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income from Dependent Properties Breach Class members' losses for claims covered by the policy.

80.     Plaintiff and the other members of the Business Income from Dependent Properties Breach Class have complied with all applicable provisions of the Policies and/or those provisions have been waived by Twin City or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

81.     By denying coverage for any Business Income from Dependent Properties losses incurred by Plaintiff and the other members of the Business Income from Dependent Properties Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Twin City has breached its coverage obligations under the Policies.

82.     As a result of Twin City's breaches of the Policies, Plaintiff and the other members

of the Business Income from Dependent Properties Breach Class have sustained substantial

damages for which Twin City is liable, in an amount to be established at trial.

**COUNT V**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

83.    Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth

herein.

84.    Plaintiff brings this Count individually and on behalf of the other members of the

Business Income Declaratory Judgment Class.

85.    Plaintiff's Twin City insurance policy, as well as those of the other Business

Income Declaratory Judgment Class members, are contracts under which Twin City was paid

premiums in exchange for its promise to pay Plaintiff's and the other Business Income Declaratory

Judgment Class members' losses for claims covered by the Policy.

86.    Plaintiff and the other Business Income Declaratory Judgment Class members  have

complied with all applicable provisions of the Policies and/or those provisions have been waived

by Twin City or Twin City is estopped from asserting them, and yet Twin City has abrogated its

insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has

wrongfully and illegally refused to provide coverage to which Plaintiff and other members of the

Business Income Declaratory Judgment Class are entitled.

87.    Twin City has denied claims related to COVID-19 on a uniform and class wide

basis, without individual bases or investigations, such that the Court can render declaratory

judgment irrespective of whether members of the Class have filed a claim.

88.    An actual case or controversy exists regarding Plaintiff's and the other Business

Income Declaratory Judgment Class members' rights and Twin City's obligations under the

Policies to reimburse them for the full amount of Business Income losses incurred by Plaintiff and

the other Business Income Declaratory Judgment Class members in connection with suspension

of their operations stemming from the COVID-19 pandemic.

89.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory

Judgment Class members seek a declaratory judgment from this Court declaring the following:

      i.    Plaintiff's and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their operations stemming from the COVID-19 pandemic are insured losses under their Policies; and

      ii.    Twin City is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the actual amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their operations stemming from the COVID-19 pandemic.

### COUNT VI
### <u>DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE</u>
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

90.    Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth

herein.

91.    Plaintiff brings this Count individually and on behalf of the other members of the

Civil Authority Declaratory Judgment Class.

92.    Plaintiff's Twin City insurance policy, as well as those of the other Civil Authority

Declaratory Judgment Class members, are contracts under which Twin City was paid premiums

in exchange for its promise to pay Plaintiff's and the other Civil Authority Declaratory Judgment

Class members' losses for claims covered by the Policy.

93.    Plaintiff and the other Civil Authority Declaratory Judgment Class members have

complied with all applicable provisions of the Policies and/or those provisions have been waived

by Twin City or Twin City is estopped from asserting them, and yet Twin City has abrogated its

insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and other members of the Civil Authority Declaratory Judgment Class members are entitled.

94.     Twin City has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

95.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class members' rights and Twin City's obligations under the Policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

96.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

> i.     Plaintiff's and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their practices stemming from the COVID-19 pandemic are insured losses under their Policies; and
>
> ii.     Twin City is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their practices stemming from the COVID-19 pandemic.

## COUNT VII
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

97.     Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth herein.

98.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

99.     Plaintiff's Twin City insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the Policy.

100.    Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Twin City or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other members of the Extra Expense Declaratory Judgment Class are entitled.

101.    Twin City has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

102.    An actual case or controversy exists regarding Plaintiff's and the other Extra Expense Declaratory Judgment Class members' rights and Twin City's obligations under the Policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by them in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

103.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.      Plaintiff's and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and

the necessary interruption of their practices stemming from the COVID-19 pandemic are insured losses under their Policies; and

ii.       Twin City is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their practices stemming from the COVID-19 pandemic.

## COUNT VIII
## DECLARATORY JUDGMENT – BUSINESS INCOME FROM DEPENDENT PROPERTIES COVERAGE
**(Claim Brought on Behalf of the Business Income from Dependent Properties Declaratory Judgment Class)**

104.     Plaintiff Marra's 46, LLC repeats and realleges Paragraphs 1-50 as if fully set forth herein.

105.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income from Dependent Properties Declaratory Judgment Class.

106.     Plaintiff's Twin City insurance policy, as well as those of the other Business Income from Dependent Properties Declaratory Judgment Class members, are contracts under which Twin City was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income from Dependent Properties Declaratory Judgment Class members' losses from damages to Covered Property.

107.     Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Twin City or Twin City is estopped from asserting them, and yet Twin City has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other members of the Business Income from Dependent Properties Declaratory Judgment Class are entitled.

108. Twin City has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

109. An actual case or controversy exists regarding Plaintiff's and the other Business Income from Dependent Properties Declaratory Judgment Class members' rights and Twin City's obligations under the Policies to reimburse Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Business Income from Dependent Properties Declaratory Judgment Class lost from damages to Covered Property due to COVID-19.

110. Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

> i. Plaintiff's and the other Business Income from Dependent Properties Declaratory Judgment Class members' losses to Covered Property from further damage by COVID-19 are insured losses under their Policies; and
>
> ii. Twin City is obligated to pay Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members for the full amount of the losses to Covered Property from further damage by COVID-19.

## VI.  **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

a. Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b. Entering judgment on Counts  I-IV in  favor of Plaintiff and the members  of the

Business Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, and the Business Income from Dependent Properties Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

      c.     Entering declaratory judgments on Counts V-VIII in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Business Income from Dependent Properties Declaratory Judgment Class as follows:

          i.     Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their Policies; and

          ii.     Twin City is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their operations stemming from the COVID-19 pandemic;

      d.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

      e.     Ordering Defendant to pay attorneys' fees and costs of suit; and

      f.     Ordering such other and further relief as may be just and proper.

## VII.   <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: July 14, 2020

                                  Respectfully submitted,

                                  **LOCKS LAW FIRM, LLC**

                                  */s/James A. Barry*

                                  James A. Barry, Esq.

801 N. Kings Highway
Cherry Hill, NJ 08034
jbarry@lockslaw.com
Tel: (856)663-8200

Alfred M. Anthony, Esq.
**LOCKS LAW FIRM, LLC**
3 Becker Farm Road, Suite 105
Roseland, NJ 07068
aanthony@lockslaw.com
Tel: (973) 671-1940